IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**CHASE CARMEN HUNTER,**

    **Plaintiff,**

v.

                                                        Case No. 2:15-cv-05508

**MICHAEL D. RILEY, individually and
in his official capacity as Commissioner of Insurance
for West Virginia, and in his official capacity as a
Committee Member of the National Association
of Insurance Commissioners;
THE WEST VIRGINIA OFFICES OF INSURANCE COMMISSIONER;**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The plaintiff's Motion to Proceed Without Prepayment of Fees and Costs was previously granted by separate Order (ECF No. 8).

On April 20, 2015, the plaintiff, Carmen Chase Hunter ("Hunter"), filed, *inter alia*, a Verified Petition for Declaratory Judgment and Permanent Injunction (hereinafter "Complaint") (ECF No. 2), seeking a declaratory judgment declaring that Hunter has an active and valid West Virginia non-resident insurance agent license effective October 31,

1

2013, and an order permanently enjoining the defendants from "violating the state and federal laws, constitutions, and human rights described [in the Complaint]." This is the second civil action filed by Hunter in this court concerning the allegations contained in her Complaint, and one of many similar cases filed in federal courts around the country. Hunter voluntarily dismissed her first civil action filed in this court pursuant to Rule 41(a)(1)(A) on April 16, 2015. Notice of Dismissal, ECF No. 16, *Hunter v. Riley*, Case No. 2:14-cv-26978 (S.D. W. Va., Apr. 16, 2015). Then, on April 20, 2015, she filed the instant civil action.

## STANDARD OF REVIEW

The defendants have filed a Motion to Dismiss (ECF No. 22), asserting that Hunter's Complaint fails to state any plausible claim upon which relief can be granted and, thus, the Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

2

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> \* \* \*
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* at 678.

## ANALYSIS

The defendants named in Hunter's present Complaint are Michael D. Riley, the current Commissioner of Insurance for the State of West Virginia, and the West Virginia Offices of Insurance Commissioner ("WVOIC"), a state agency. The bulk of the allegations in the Complaint (some of which are quite fanciful in nature and involve persons and events that took place outside the Southern District of West Virginia), address conduct that Hunter believes led to the improper revocation of her insurance agent licenses in Florida and Texas. The undersigned believes that such allegations, none of which this court has jurisdiction to address, are unnecessary to the consideration

3

of the critical issue before this court, which is whether the conduct of defendants Riley and the WVOIC with regard to her West Virginia insurance license has violated Hunter's federal constitutional or statutory rights. The necessary facts derived from Hunter's Complaint, which must be taken as true for the purpose of the defendants' Motion to Dismiss, are as follows:

Hunter is an individual licensed insurance agent who has held a non-resident West Virginia insurance producer license for many years. (ECF No. 2 at 3, ¶ 10). In February of 2014, Hunter received written notice from the defendants stating that the WVOIC was initiating an administrative complaint against Hunter and providing her with a copy of the administrative complaint. (*Id.* at 4, ¶ 17). The written notice advised Hunter that the WVOIC could revoke her West Virginia non-resident insurance agent license because her licenses in two other states, Texas and Florida, had been revoked in May and August 2013, respectively. (*Id.* at 4-5, ¶¶ 18). Hunter alleges that the defendants obtained this information from the National Insurance Producer Registry ("NIPR"), which is used to manage insurance licensee information by the defendants, and the National Association of Insurance Commissioners ("NAIC"), of which defendant Riley is a committee member and director. (*Id.* at 5, ¶¶ 19-20).

Hunter contends that the revocation of her Texas license was vacated less than thirty (30) days thereafter, and she further alleges that, at the time the Complaint was filed, she was actively appealing the Florida revocation. (*Id.*, ¶ 21). She further contends that, "many months" before the defendants took their administrative action, Hunter reported to the defendants in writing that the Texas revocation order had been

4

vacated. She further states that she had not reported the Florida revocation because it was not yet final. (*Id.*, ¶ 22). Hunter further alleges that, long before March 2014, she notified the defendants of her position that she was a victim of fraud and other misconduct arising out of a fraudulent judgment in a Florida court and, therefore, the Florida revocation is void as a matter of law. (*Id.* at 10-11, ¶¶ 22-24). Hunter further states that, prior to October of 2013, she reported to the defendants and the NIPR Gateway, on more than one occasion, that the NIPR contained erroneous information about her Texas license. (*Id.*, ¶ 25).

Hunter further alleges that she instituted civil actions in Florida concerning the alleged fraud of which she claims to have been a victim. (*Id.*, ¶ 26). She further contends that after those lawsuits were filed, defendant Riley spoke about her on the telephone with David Busch, a staff attorney at the Florida Division of Financial Services, and Jeff Atwater, a Florida insurance regulator, who is also a member of the Florida Governor's cabinet. (*Id.* at 12, ¶ 27). Hunter contends that Atwater persuaded Riley to revoke Hunter's West Virginia license and told him that he could do so without holding a hearing by mailing the statutorily-required notice to an address for Hunter that was no longer valid. (*Id.*)

Hunter further alleges that, in May of 2014, after she advised the defendants herein in writing that she intended to file a civil action against them, the defendants notified her in writing that the hearing on her administrative complaint was being continued. At the time of the filing of the instant Complaint, the defendants had not pursued the administrative complaint against Hunter. (*Id.* at 12-13, ¶¶ 28-29).

However, Hunter further alleges that, although she paid the renewal fee for a two-year license effective October of 2013, she has been denied online access to print her license and the defendants have not otherwise provided her with her license. She further asserts that the defendants' "State Based System" ("SBS") shows that her license was "denied (01/10/2014)." (*Id.* at 13, ¶¶ 30-31). Hunter seeks a declaration that the defendants' SBS erroneously shows that her West Virginia license was denied 01/10/2014 and that her license is "active" effective October of 2013.

On September 18, 2015, the defendants filed a Motion to Dismiss (ECF No. 22) and a Memorandum of Law in support thereof (ECF No. 23). The defendants' Memorandum of Law addresses several bases for dismissal of Hunter's Complaint. First, the defendants assert that the allegations in the Complaint are insufficient to state a cognizable cause of action and should be dismissed under the *Twombly/Iqbal* standard. Second, they assert that the plaintiff's claims are barred in federal court by the Eleventh Amendment. Third, they contend that this federal court should apply the *Younger* abstention doctrine and abstain from interfering with the ongoing State proceedings involving Hunter's license. The undersigned will address each contention in turn.

### A. Failure to state a plausible claim.

The defendants' Memorandum of Law asserts that "[t]he foundation of Plaintiff's lawsuit against Defendants is based upon Plaintiff's disagreement with adverse decisions adjudicated in other forums and against parties not included in this lawsuit." (ECF No. 23 at 4). The defendants contend that the Complaint fails to identify any specific laws that were allegedly violated by the defendants and therefore fails to provide the

6

defendants with fair notice of the basis for her claims. (*Id.*) The defendants further assert that the Complaint is premised upon nothing more than legal conclusions without any detailed factual support and, thus, pursuant to *Twombly*, such allegations are not entitled to a presumption of truth. 550 U.S. at 555. (*Id.*) Their Memorandum of Law further states:

> The Complaint does not set forth a single action taken by Defendants that establish[es] deprivation of any federal or constitutional right, nor a single fact which would implicate a claim for any of the causes of action against Defendants. The allegations in the complaint are premised upon vague and conclusory claims regarding the alleged illegality of actions taken by Florida and Texas in revoking Plaintiff's insurance licenses.

(*Id.* at 5).

The plaintiff's Response to the Motion to Dismiss asserts that the defendants were able to understand her Complaint well enough to articulate the "Background" section of their Memorandum. (ECF No. 24 at 2). The plaintiff then spends 19 pages of her 23-page Response (excluding the exhibits attached thereto) laying out the alleged misconduct by various persons and officials in Florida, Texas and Virginia, which she claims led to the revocation of her insurance agent licenses in those states. However, the Response does not in any way address the specific conduct of defendants Riley and the WVOIC. (*Id.* at 2-21). The Response also makes a conclusory statement that the NIPR is owned by the NAIC "which functions in violation of federal law because it actively regulates interstate commerce." (*Id.* at 21-22). At the conclusion of the Response, Hunter requests that the court deny the defendants' Motion to Dismiss and provide her an opportunity to amend her Complaint or appoint counsel to do so on her behalf. (*Id.* at 22).

The plaintiff's "Introduction" and "Jurisdiction and Venue" sections of her Complaint list a litany of federal civil and criminal statutes and constitutional amendments under which she claims this civil action arises. However, as explained in greater detail in the undersigned's Proposed Findings and Recommendation in the plaintiff's prior civil action, the plaintiff's conclusory reliance on the majority of this authority is misplaced as there is no private right of action available under these statutes. A liberal construction of the Complaint leads the undersigned to believe that the only potentially actionable claim against defendants Riley and the WVOIC may be a potential Fourteenth Amendment due process claim arising out of the defendants' actions with regard to the status of Hunter's West Virginia insurance license. Such a claim would be actionable under 42 U.S.C. § 1983. However, as further addressed below, additional proceedings are necessary to determine the factual basis and legal viability of such a claim.

### B. Eleventh Amendment immunity.

The defendants further assert that Hunter's claims against them are barred by the Eleventh Amendment. Their Memorandum of Law states:

> The Eleventh Amendment bars a lawsuit against a State unless the state has waived its immunity to suit in federal court or Congress has abrogated the state's immunity. *Kim v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). In the absence of consent, a suit in which the state or one of its agencies or departments in [sic; is] named as a defendant is proscribed by the Eleventh Amendment, regardless of the nature of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984). Suits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred as suits against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

(ECF No. 23 at 5). The defendants assert that Hunter's claims against them are barred because the WVOIC and Riley as its Commissioner are both arms of the state and their immunity under the Eleventh Amendment for such claims has not been waived by the State or abrogated by any valid exercise of Congressional authority. (*Id.*)

However, as Hunter's Response correctly asserts, the Eleventh Amendment does not bar a request for prospective injunctive relief, which is part of the relief she seeks herein. *See Ex parte Young*, 209 U.S. 123 (1908); *see also Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632 (2011). The Supreme Court has specified that:

> The doctrine of *Ex parte Young*, which ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity. *See, e.g., Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed.2d 371 (1985). Moreover, the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, *id.,* at 73, 106 S. Ct., at 428, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought, *Cory v. White,* [457 U.S. 85, 90-91 (1982)]. Rather than defining the nature of Eleventh Amendment immunity, *Young* and its progeny render the Amendment wholly inapplicable to a certain class of suits. Such suits are deemed to be against officials and not the States or their agencies, which retain their immunity against all suits in federal court.

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

As further noted by the United States Court of Appeals for the Fourth Circuit:

> The *Ex parte Young* exception is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings" to enforce an unconstitutional act against affected parties."

*McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 155-156).

9

Based upon this authority, the undersigned proposes that the presiding District Judge **FIND** that the WVOIC, as a state agency, is absolutely immune from suit and should be dismissed as a defendant herein. However, defendant Riley is a state official who is clothed with a duty to regulate and enforce the laws governing insurance practices in the State of West Virginia, and whom Hunter alleges has threatened to commence proceedings and engaged in conduct which violates her due process rights. Hunter seeks prospective injunctive relief to "permanently enjoin [the defendants] from violating the state and federal laws, constitutions and human rights described [in the Complaint]." (ECF No. 2 at 14). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Hunter's Complaint properly invokes the application of the *Ex parte Young* exception to Eleventh Amendment immunity with respect to Riley and that dismissal of Riley in his official capacity based upon Eleventh Amendment immunity is not appropriate.[1]

### C. Application of *Younger* abstention doctrine.

The defendants further assert that this court should not interfere with ongoing state administrative proceedings concerning Hunter's insurance license. "Under [the] *Younger*-abstention doctrine, [as defined in *Younger v. Harris*, 401 U.S. 37 (1971),] interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Auth. v. Midkiff,*

---

1 Hunter has also sued Riley in his individual capacity, which has not been directly addressed outside of the other arguments for dismissal made in the defendants' motion documents.

467 U.S. 229, 237-38 (1984). As noted in the defendants' Memorandum of Law, the Supreme Court has extended the doctrine to state administrative proceedings. *See Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). (ECF No. 23 at 6).

The Fourth Circuit has instituted a three-part test for determining when *Younger* abstention is appropriate: "(1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." *Employers Resource Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995). The defendants assert that these three elements are met in the instant case. Their Memorandum of Law states:

> First, there is an ongoing administrative proceeding as Defendants instituted an administrative complaint against Plaintiff in March of 2014. The administrative complaint is not yet resolved because the matter was stayed upon Plaintiff's filing of her Complaint in this Court. Second, Plaintiff can obtain judicial review of Defendant's decision in the administrative hearing through an appeal to [the appropriate] West Virginia Circuit Court, at which time she can raise her constitutional challenges. *See* W. Va. Code § 33-2-14. Third, the administrative proceeding implicates important State interests. The State of West Virginia has an interest in regulating and licensing insurance producers. Similarly, the State has an interest in protecting consumers by setting standards and regulating the insurance marketplace, including licensing individuals who seek to sell insurance to West Virginia consumers.

(ECF No. 23 at 6-7). Accordingly, the defendants assert that this Court should abstain from review of the merits of Hunter's claims which can be resolved by state tribunals that are better equipped to address the important state interests surrounding insurance regulation.

Hunter's Response contends that the *Younger* abstention doctrine is inapplicable in this case because there are no ongoing state proceedings. She contends that the defendants' motion documents concede that they willfully terminated "state proceedings" in or around March of 2014. (ECF No. 24 at 22). Hunter further asserts that *Younger* and its progeny involved plaintiffs and defendants who were residents of the same state, and involved actions or events that occurred in that state. She contends that her case is distinguishable from those cases because those circumstances are not present herein and, thus, *Younger* abstention should not apply. (*Id.*)

While the undersigned finds patently frivolous Hunter's argument that the *Younger* abstention doctrine is inapplicable in this case because she and the defendants do not reside in the same state, based upon the record presently before the court, the undersigned cannot confirm whether *Younger* abstention is appropriate. As noted in the pleadings, the administrative complaint initiated by the defendants against the plaintiff was allegedly stayed or continued and the record before the court does not allege or demonstrate whether those proceedings are still active or could be in the future. Additionally, the plaintiff alleges that, although she has not been notified of the same by the defendants, their website (the SBS) lists her West Virginia license renewal as having been "denied 01/10/2014." The record before the court does not demonstrate the status of the plaintiff's insurance license or the state proceedings related thereto.

Section 33-12-24 of the West Virginia Code invests the West Virginia Insurance Commissioner with the power to "examine and investigate the business affairs of every

12

person applying for or holding an insurance producer license[2] . . . to determine whether such person has been or is engaged in any violation of the insurance laws or rules of this state or has engaged in unfair or deceptive acts or practices in any state." W. Va. Code § 33-12-24(a). Section 33-12-24 of the West Virginia Code also provides that "[t]he insurance commissioner may place on probation, suspend, revoke or refuse to issue or renew an insurance producer's license" for various reasons enumerated in the statute. *See* W. Va. Code § 33-12-24(b). The statute further provides:

> (c) In the event that the action taken by the insurance commissioner is to nonrenew or to deny an application for a license, the insurance commissioner shall notify the applicant or licensee and advise, in writing, the applicant or licensee of the reason for the denial or nonrenewal of the applicant or licensee's license. The applicant or licensee may make written demand upon the insurance commissioner within ten days for a hearing before the insurance commissioner to determine the reasonableness of the insurance commissioner's action. The hearing shall be held within forty-five days and shall be held pursuant to section thirteen, article two of this chapter.

W. Va. Code § 33-12-24(c).

Additionally, W. Va. Code § 33-2-14 provides for judicial review in the Circuit Court of Kanawha County, West Virginia of a decision by the insurance commissioner after a hearing has been held, or from an order refusing a hearing, and provides specific time periods in which such appeals may be sought. The statute further provides for a subsequent appeal from the Circuit Court to the Supreme Court of Appeals of West Virginia. *See* W. Va. Code § 33-2-14.

---

2  Pursuant to W. Va. Code § 33-12-2, an "insurance producer" means "a person required to be licensed under the laws of this state to sell, solicit or negotiate insurance" and includes an "agent." Hunter's Complaint uses both of these terms.

13

In the instant matter, the record is unclear as to whether an administrative hearing has been or will be held and what, if any, decision has been made by the insurance commissioner with respect to Hunter's West Virginia insurance license.  Furthermore, it is unclear whether Hunter has initiated any appeal proceedings in the state courts.  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the record is insufficient for the court to determine whether there are ongoing state proceedings of important state interest in which the plaintiff's claims raised herein could be addressed.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the defendants' Motion to Dismiss (ECF No. 22) be **GRANTED** with respect to Hunter's claims against the West Virginia Office of Insurance Commissioner, and **DENIED WITHOUT PREJUDICE** with respect to the plaintiff's claims against Michael Riley, in order to allow additional development of the record concerning the status of the state proceedings.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed

14

Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.   <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).   Copies of such objections shall be served on the opposing parties and Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to electronically transmit a copy to the plaintiff and counsel of record.

<u>August 9, 2016</u>

Dwane L. Tinsley
United States Magistrate Judge

15